UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AIESHA S. STEWARD-BAKER,

               Plaintiff,

     v.

COUNTY OF KING, et al.,

               Defendants.

CASE NO. C15-661-MJP

ORDER ON PLAINTIFF'S MOTION
FOR RELIEF FROM EXPERT
WITNESS DEADLINE,
DEFENDANT KING COUNTY'S
MOTION FOR SUMMARY
JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION
FOR SUMMARY JUDGMENT

     THIS MATTER comes before the Court on Plaintiff's Motion for Relief from Expert

Witness Deadline, (Dkt. No. 50), Defendant King County's Motion for Summary Judgment,

(Dkt. No. 39), and Defendant Olympic Security Services, Inc.'s ("Olympic Security") Motion for

Joinder in Defendant King County's Motion for Summary Judgment, (Dkt. No. 43).  Having

reviewed the motions, the response briefs, (Dkt. Nos. 52, 56, 58), the reply briefs, (Dkt. Nos. 63,

65), and the related record, the Court hereby DENIES Plaintiff's Motion for Relief from Expert

Witness Deadline, GRANTS in part and DENIES in part Defendant King County's Motion for

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 1

1  Summary Judgment, and GRANTS in part and DENIES in part Defendant Olympic Security's

2  Motion for Summary Judgment.

3  **<u>Background</u>**

4         The Downtown Seattle Transit Tunnel ("DSTT") is a 1.3 mile, underground roadway

5  with five passenger stations.  (Dkt. No. 40 at 105.)  The DSTT was closed between 2005 and

6  2007 while it was retrofitted for joint use by buses and the light rail.  (Dkt. No. 41 at 2.)  During

7  that time, Defendant King County considered how to provide security in the DSTT once it

8  reopened.  (Id.)  Defendant King County ultimately decided to expand its existing contract with

9  Defendant Olympic Security to include the provision of security guard services in the DSTT.

10  (Id.)

11         In January 2010, Defendant King County's 2009 Tunnel Guard Manual ("Manual") was

12  in effect.  (Dkt. No. 40 at 105–111.)  Pursuant to that Manual and Defendant King County's

13  contract with Defendant Olympic Security, Olympic Security guards were to"[p]rovide security

14  services in each of the five tunnel stations by observing and reporting violations of the tunnel

15  code of conduct or obvious breaches of the peace."  (Id. at 105.)   Specifically, the Manual

16  provided:

17      B.  When a violation of the tunnel code of conduct or a breach of the peace is
          observed, the tunnel station guard team shall immediately contact the security
18        guard supervisor by radio and report the incident.

19        1.  The security guard supervisor shall make note of the reported incident and
              determine if a law enforcement response is, indeed, required.
20
21            a.  If, based on the tunnel station guard team's input, a law enforcement
                  response is not required, the security guard supervisor will enter the
22                incident on his/her log sheet accordingly.

23            b.  If it appears that a violation of the tunnel code of conduct or a breach
                  of the peace has occurred, the security guard supervisor will

24  ORDER ON PLAINTIFF'S MOTION FOR RELIEF
    FROM EXPERT WITNESS DEADLINE,
    DEFENDANT KING COUNTY'S MOTION FOR
    SUMMARY JUDGMENT, AND DEFENDANT
    OLYMPIC SECURITY'S MOTION FOR
    SUMMARY JUDGMENT- 2

immediately contact LINK Control and request a law enforcement response to the scene.  Should the security guard supervisor be at a location other than the scene of the incident, he/she should immediately board a bus to that location.  The security guard supervisor, upon arrival on the scene, shall stand by and assist law enforcement as required.

(Id. at 107.)

On January 28, 2010, at approximately 5:30 p.m., Plaintiff—who was a minor at the time and is African American—was in downtown Seattle with a friend.  (Dkt. No. 3 at 7, 9.)  Plaintiff noticed a group of individuals coming towards her in an aggressive manner.  (Id. at 7.)  The group followed Plaintiff and her friend into the downtown Macy's store and proceeded to make threats toward Plaintiff.  (Id.)

Seattle Police Officers Eastman, Pinkerton, Bender and Chase entered the Macy's store and made contact with both Plaintiff and the group of individuals.  (Id.)  Plaintiff told one or more of the officers that the group was threatening and intimidating her and trying to assault her.  (Id.)  She asked one or more of the officers to escort her to the bus tunnel so she could board her bus home.  (Id.)

After being contacted by the officers, the group left the merchandise floor of the Macy's store but remained in the area and around the doors that exited to the street.  (Id. at 8.)  Officers Eastman, Pinkerton, Bender, and Chase directed Plaintiff to leave the Macy's store and downtown Seattle, but did not escort her to the bus tunnel.  (Id.)  When Plaintiff exited the Macy's store with her friend, she came across the same group again, and one of the group members raised her fists toward Plaintiff as if to assault her.  (Id.)

Plaintiff and her friend proceeded to the area near Westgate Plaza and the tunnel in order to catch a bus home.  (Id.)  Plaintiff saw the same officers who had contacted her in the Macy's

1   store near the entrance to the tunnel.  (Id.)  Plaintiff told the officers that the same group was

2   following her, harassing her, and attempting to assault her.  (Id.)  She asked the officers to escort

3   her to the location in the tunnel where she could board her bus.  (Id.)  The officers told her she

4   had been loitering around the downtown area and needed to leave.  (Id.)  When she asked the

5   officers to escort her into the tunnel for the third time, the officers said they could not escort her

6   into the tunnel because they did not have time for kids who started trouble.  (Id.)

7        While Plaintiff was talking to the officers, a female from the same group approached and

8   threatened to assault Plaintiff.  (Id. at 9.)  Plaintiff asked the officers if they would do something

9   to help her.  (Id.)  The officers walked the group across the street, leaving Plaintiff and her friend

10  unaccompanied in the plaza.  (Id.)  Plaintiff and her friend then entered the tunnel and went to

11  the platform to wait for a bus.  (Id.)

12       Plaintiff stood near three uniformed Olympic Security guards while she waited for her

13  bus.  (Id.)  She told the Olympic Security guards that there was a group of people threatening to

14  assault her.  (Id.)  When she saw the same group of individuals running towards her, Plaintiff

15  told the Olympic Security Guards she was about to be assaulted.  (Id.)  The group, consisting of

16  five individuals, converged around Plaintiff while she stood directly by and in between the

17  Olympic Security guards.  (Id. at 10.)  One member of the group beat Plaintiff while the others

18  encouraged the assault.  (Id.)  The group then stole several items of Plaintiff's personal property

19  and ran away.  (Id.)

20       The Olympic Security guards did not intervene in the assault.  (Id.)  One of the Olympic

21  Security guards radioed his supervisor, who in turn radioed the Link Control Center.  (Dkt. No.

22  41 at 3.)  Link Control requested medical aid and a police response.  (Id.)  Link Control also

23  contacted the King County Sheriff's Office, the Metro Transit Police, and the Seattle Fire

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
24  FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 4

1  Department.  (Id.)  The Seattle Police Department arrived at the scene within about eight minutes

2  of the assault.  (Id.)

3        Plaintiff commenced this suit against Defendants on April 27, 2015, asserting federal and

4  state law claims arising out of the incidents that occurred on January 28, 2010.  (Dkt. No. 1.)

5  She filed an Amended Complaint on April 28, 2015.  (Dkt. No. 3.)   Defendant King County has

6  filed a Motion for Summary Judgment in which Defendant Olympic Security also joins.  (Dkt.

7  Nos. 39, 43.)  Plaintiff opposes both Motions, and has filed a Motion for Relief from Expert

8  Witness Deadline.  (Dkt. Nos. 50, 52.)  Defendants King County and Olympic Security oppose

9  Plaintiff's Motion.  (Dkt. Nos. 56, 58.)

10  **Discussion**

11  **I.    Legal Standards**

12      **A.  Federal Rule of Civil Procedure 37**

13        Fed. R. Civ. P. 37(c)(1) provides:

14        If a party fails to provide information or identify a witness as required by Rule 26(a) or

15  (e), the party is not allowed to use that information or witness to supply evidence on a motion, at

16  a hearing, or at a trial, unless the failure was substantially justified or is harmless.  In addition to

17  or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

18      (a)  may order payment of the reasonable expenses, including attorney's fees, caused by
19         the failure;

20      (b)  may inform the jury of the party's failure; and

21      (c)  may impose other appropriate sanctions, including any of the orders listed in Rule
22         37(b)(2)(A)(i)–(vi).

23  *//*

24  ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 5

**B. Summary Judgment**

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**II.   Plaintiff's Motion for Relief from Expert Witness Deadline**

The deadline to disclose expert witnesses and for expert reports was January 19, 2016. (Dkt. No. 25.) Defendant King County disclosed expert Chris McGoey on that date. (Dkt. No. 59 at 2.) Plaintiff did not make any disclosures. (Id.) On January 26, 2016, Defendant King County filed its Motion for Summary Judgment. (Dkt. No. 39.) Defendant Olympic Security joined in the motion on January 28, 2016. (Dkt. No. 43.) Plaintiff's response to both motions was due February 16, 2016. The Parties came to an agreement that the pending motions would be re-noted to February 26, 2016, making Plaintiff's response due by February 22, 2016. (Dkt. No. 59 at 2–3.)

On February 18, 2016, Plaintiff filed her Motion for Relief from Expert Witness Deadline and disclosed Stanley Kephart as an expert. (Dkt. Nos. 50, 59 at 12.) In the Motion, Plaintiff asks the Court to allow the late disclosure of Mr. Kephart, to allow the use of Mr. Kephart's declaration in opposition to Defendant King County's and Defendant Olympic Security's Motions for Summary Judgment, and to allow Plaintiff to call Mr. Kephart in her case-in-chief. (Dkt. No. 50 at 2.) Plaintiff contends she ". . . does not seek to make excuses for missing the deadline for expert witnesses . . ." (Id. at 3.) She also argues the late disclosure does not

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 6

1    prejudice Defendants and that any prejudice can be alleviated by allowing Defendants King

2    County and Olympic Security to re-note their Motions, allowing them to depose Mr. Kephart, or

3    by modifying the current stipulation and order staying discovery.  (Id. at 4.)

4         The Court cannot conclude that Plaintiff's late disclosure of Mr. Kephart was

5    substantially justified, as is required under Rule 37, because Plaintiff has offered no justification

6    for the late disclosure.  (Id. at 3.)  Nor can the Court conclude that the belated disclosure is

7    harmless.  Defendants King County and Olympic Security relied on the absence of an expert

8    report in filing their pending Motions for Summary Judgment.  Allowing Plaintiff's belated

9    disclosure would unfairly prejudice them.  Finally, any prejudice to Defendants King County and

10   Olympic Security cannot be alleviated by allowing them to take Mr. Kephart's deposition or by

11   re-noting the pending Motions.  Accordingly, the Court DENIES Plaintiff's Motion for Relief

12   from Expert Witness Deadline.  Plaintiff will not be able to use Mr. Kephart's opinion in

13   opposition to Defendant King County's and Defendant Olympic Security's pending Motions for

14   Summary Judgment, in her case-in-chief, or for any other purpose in this litigation.  The Court

15   declines impose additional sanctions.

16   **III.    Defendant King County's Motion for Summary Judgment**

17        **A.  Exhibits to Mr. Kephart's Declaration**

18        The Court first addresses a point raised by Defendant King County in its reply brief.

19   Defendant King County argues the nine exhibits to Mr. Kephart's declaration should be stricken

20   because they are not authenticated.  (Dkt. No. 65 at 6.)  Because the Court does not rely on these

21   exhibits in resolving Defendant King County's Motion for Summary Judgment, the Court does

22   not reach Defendant King County's arguments regarding exhibits 1–9 to Mr. Kephart's

23   declaration.

24   ORDER ON PLAINTIFF'S MOTION FOR RELIEF
     FROM EXPERT WITNESS DEADLINE,
     DEFENDANT KING COUNTY'S MOTION FOR
     SUMMARY JUDGMENT, AND DEFENDANT
     OLYMPIC SECURITY'S MOTION FOR
     SUMMARY JUDGMENT- 7

**B.  Section 1983**

In <u>Deshaney v. Winnebago County Dep't of Soc. Serv.</u>, 489 U.S. 189, 197 (1989), the Supreme Court held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  The general rule announced in <u>DeShaney</u> that members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties "is modified by two exceptions: (1) 'the special relationship' exception; and (2) the 'danger creation exception.'"  <u>L.W. v. Grubbs</u>, 974 F.2d 119, 121 (9th Cir. 1992).

The "special relationship" exception applies when the state takes a person into its custody and holds him there against his will.  <u>See</u> <u>Estate of Amos v. City of Page</u>, 257 F.3d 1086, 1090 (9th Cir. 2001).  This exception does not apply here, because there is no evidence that Plaintiff was in custody at the time of the assault.  The second exception, the "danger creation" exception, applies when "state action affirmatively place[s] the plaintiff in a position of danger, that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced."  <u>Johnson v. City of Seattle</u>, 474 F.3d 634, 638 (9th Cir. 2007).

Defendant King County moves for summary judgment on Plaintiff's Section 1983 claims arguing, inter alia, that Plaintiff cannot show Defendant King County violated her constitutional rights.  (Dkt. No. 39 at 12–16.)  Specifically, Defendant King County contends it cannot be liable under the "danger creation" exception because it did not affirmatively place Plaintiff in danger.  (<u>Id.</u>)  Plaintiff argues her Section 1983 claims fall under the "danger creation" exception, and that Defendant King County's decision to employ private security affirmatively placed her in danger.  (Dkt. No. 52 at 11.)

ORDER ON PLAINTIFF'S MOTION FOR RELIEF FROM EXPERT WITNESS DEADLINE, DEFENDANT KING COUNTY'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT OLYMPIC SECURITY'S MOTION FOR SUMMARY JUDGMENT- 8

1    In Johnson, 474 F.3d at 639–641, the Ninth Circuit held the "danger creation" exception

2    to DeShaney did not apply to several plaintiffs who were injured when fights broke out during a

3    Mardi Gras celebration in downtown Seattle.  The assistant police chief ordered police to remain

4    on the crowd's periphery because he believed inserting officers into the hostile crowd would

5    incite greater violence.  Id. at 637.  The Ninth Circuit reasoned "[t]he decision to switch from a

6    more aggressive operation plan to a more passive one was not affirmative conduct that placed []

7    Plaintiffs in danger, because it did not place them in any worse position than they would have

8    been in had the police not come up with any operational plan whatsoever."  Id. at 641.

9    Viewing the underlying facts in the light most favorable to Plaintiff, the Court finds no

10   reasonable jury could find Defendant King County affirmatively placed Plaintiff in danger.

11   Here, as in Johnson, Defendant King County's decision to change its security policy from the use

12   of law enforcement officers to the use of private security guards to "observe and report" breaches

13   of the peace did not place Plaintiff in any worse position than she would have been in if there

14   was no security policy whatsoever.  Accordingly, the Court GRANTS Defendant King County's

15   Motion for Summary Judgment as to Plaintiff's Section 1983 claims.

16   **C.  Negligence**

17   Negligence exists if a defendant breaches a duty owed to a plaintiff resulting in injury to

18   that plaintiff, and there is proximate cause between the breach and the injury.  Tortes v. King

19   Cty., 119 Wash. App. 1, 7 (2003).  As a general matter, a common carrier owes " . . . the highest

20   degree of care to its passengers . . . "  Id.  "However, the duty or standard of care owed by a

21   common carrier is not one of strict liability."  Id.  "A common carrier is not the insurer of its

22   passengers' safety, and negligence should not be presumed from the mere happening of an

23   accident."  Id.  Thus, while common careers have a duty to guard against foreseeable third party

24

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 9

1  actions, they have no such duty where the conduct at issue was not foreseeable as a matter of

2  law.  Id.

3         Defendant King County first argues there is an issue as to whether Plaintiff attained the

4  status of a "passenger" and was, therefore, owed any special duty.  (Dkt. No. 39 at 19.)

5  However, Defendant King County does not explain why Plaintiff would not be considered a

6  "passenger" and, in fact, offers no analysis of this issue.  (Id.)  To determine whether a person

7  has obtained "passenger" status, Washington courts consider the following factors:

8         (1) place (a place under the control of the carrier and provided for the use of
          persons who are about to enter carrier's conveyance); (2) time (a reasonable time
9         before the time to enter the conveyance); (3) intention (a genuine intention to take
          passage upon carrier's conveyance); (4) control (a submission to the directions,
10        express or implied, of the carrier); and (5) knowledge (a notice to carrier either
          that the person is actually prepared to take passage or that persons awaiting
11        passage may reasonably be expected at the time and place).

12  Zorotovich v. Washington Toll Bridge Authority, 80 Wash.2d 106, 108–09 (1971).  Here, there

13  is evidence that Plaintiff was standing in the DSTT, near the location where her bus would

14  arrive, with the intention of boarding the bus at the time of the assault.  (Dkt. No. 53.)  There is

15  also evidence that the DSTT was under Defendant King County's control at the time of the

16  assault.  (See e.g. Dkt. No. 41.)  Viewing these facts in the light most favorable to Plaintiff, the

17  Court finds a reasonable jury could find Plaintiff obtained the status of a "passenger."

18        Defendant King County argues even if Plaintiff attained "passenger" status,  the Court

19  should grant summary in its favor on Plaintiff's negligence claim because Plaintiff cannot

20  establish the duty and proximate cause elements of the claim.  (Id. at 19–22.)  With respect to the

21  duty element of the claim, Defendant King County argues Plaintiff cannot show the assault was

22  foreseeable.  (Id. at 21.)  It contends Plaintiff can point to no evidence "of any similar violent

23  assaults taking place in the bus tunnel . . ."  (Id.)  Defendant King County further argues the

24
ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 10

1    Court should find, as a matter of law, that the proximate cause of Plaintiff's injury was the group

2    of individuals who assaulted her.  (Id.)  Plaintiff argues both that the assault at issue was

3    foreseeable and that it is reasonable to infer that the Olympic Security guards' inaction was the

4    proximate cause of her injury.  (Dkt. No. 52 at 18–20.)

5        Viewing the underlying facts in the light most favorable to Plaintiff, the Court finds a

6    reasonable jury could find both that Defendant King County had a duty to protect Plaintiff from

7    the assault, and that Defendant King County's decision to employ private security guards to

8    "observe and report," but not to intervene or assist, was the proximate cause of Plaintiff's injury.

9    Defendant King County argues this case is analogous to Tortes, 119 Wn. App. at 6–7, where the

10   Washington Court of Appeals held, as a matter of law, that King County could not have foreseen

11   that a man would board a King County Metro bus, shoot and kill the driver, shoot himself in the

12   head, and that the bus would plunge off of the edge of the Aurora Avenue Bridge, injuring

13   passengers.

14       Defendant King County's reliance on Tortes is inapposite.  The Court cannot conclude

15   that the assault at issue in this case was unforeseeable to Defendant King County as a matter of

16   law.  Here, a reasonable jury could find the assault was foreseeable based on the following:  (1)

17   Defendant King County determined security was necessary in the DSTT and contracted with

18   Defendant Olympic Security for the provision of private security guards; and (2) Defendant King

19   County developed a detailed process to respond to "breaches of the peace" in the DSTT,

20   including a procedure for dealing with incidents that require a law enforcement response.

21   Further, a reasonable jury could find Defendant King County's decision to employ private

22   security guards in the DSTT to "observe and report," but not to intervene or assist, was the

23   proximate cause of Plaintiff's injury based the fact that police officers were twice able to stop the

24
ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 11

1  group of individuals from assaulting Plaintiff before she entered the bus tunnel.  (Dkt. No. 53.)

2  Accordingly, the Court DENIES Defendant King County's Motion for Summary Judgment as to

3  Plaintiff's negligence claim.

### D.  King County Code 28.96

Defendant King County moves for summary judgment on Plaintiff's claim under King

County Code 28.96 arguing the code section does not create a private cause of action.  (Dkt. No.

39 at 22.)  Plaintiff does not address Defendant King County's argument in her response brief.

(Dkt. No. 52.)  Because it appears King County Code 28.96 does not create a private cause of

action, (See Dkt. No. 39 at 22), the Court GRANTS Defendant King County's Motion for

Summary Judgment as to Plaintiff's claim under King County Code 28.96.

### E.  Outrage Claim

The elements of outrage are: (1) that defendant engaged in extreme and outrageous

conduct, (2) that intentionally or recklessly inflicted emotional distress, and (3) that plaintiff

suffered severe emotional distress as a result of defendant's conduct.  Reid v. Pierce County, 136

Wash.2d 195, 202 (1998).  The conduct in question must be "so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."  Grimsby v. Samson, 85 Wn.2d 52,

59 (1975).

Defendant King County argues the Court should grant summary judgment in its favor on

Plaintiff's outrage claim because there is no evidence to establish intentional or reckless conduct

on the part of Defendant King County and because no reasonable jury could find Defendant King

County's decision to adopt an "observe and report" policy was ". . . so outrageous in character,

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 12

1    and so extreme in degree, as to go beyond all possible bounds of decency . . ."  (Dkt. No. 24 at

2    22–24.)

3           Viewing the underlying facts in the light most favorable to Plaintiff, the Court finds a

4    reasonable jury could find Defendant King County acted intentionally or recklessly and engaged

5    in extreme and outrageous conduct.  As discussed supra, the Court has found that a reasonable

6    jury could conclude that the assault at issue was foreseeable to Defendant King County.  As

7    such, the Court finds a reasonable jury could also conclude that Defendant King County

8    intentionally or recklessly disregarded the likelihood of harm to Plaintiff by employing private

9    security to "observe and report" and restricting their ability to respond, and that Defendant King

10   County's decision was extreme and outrageous.  Accordingly, the Court DENIES Defendant

11   King County's Motion for Summary Judgment as to Plaintiff's outrage claim.

12   **IV.    Defendant Olympic Security's Motion for Summary Judgment**

13           **A.  Negligence Claim**

14           Defendant Olympic Security moves for summary judgment on Plaintiff's negligence

15   claim arguing Plaintiff cannot show the assault at issue in this case was foreseeable to Defendant

16   Olympic Security.  (Dkt. No. 43 at 4–5.)  In its reply brief, Defendant Olympic Security also

17   argues its actions were not the proximate cause of Plaintiff's injury.  (Dkt. No. 11 at 13.)

18           As discussed supra, the Court has rejected the argument that the assault at issue in this

19   case was not foreseeable to Defendant King County as a matter of law.  Viewing the underlying

20   facts in the light most favorable to Plaintiff, the Court finds a reasonable jury could also find the

21   assault was foreseeable to Defendant Olympic Security based on Defendant King County's

22   decision to retain Defendant Olympic Security to provide security in the DSTT and based on the

23   procedures set forth for handling "breaches of the peace" in the Manual.  And, as discussed

24

ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 13

1    supra, a reasonable jury could find Defendant Olympic Security's failure to intervene in the

2    assault was the proximate cause of Plaintiff's injury given the fact that police officers were twice

3    able to prevent the group of individuals from assaulting Plaintiff.  Accordingly, the Court

4    DENIES Defendant Olympic Security's Motion for Summary Judgment as to Plaintiff's

5    negligence claim.

6    **B.  King County Code 28.96**

7    Defendant Olympic Security argues the Court should grant summary judgment in its

8    favor on Plaintiff's claim under King County Code 28.96 because no private cause of action

9    exists for a violation of this code section.  (Dkt. No. 43 at 6–7.)  As discussed supra, King

10   County Code 28.96 does not provide a private cause of action.  Therefore, the Court GRANTS

11   Defendant Olympic Security's Motion for Summary Judgment as to Plaintiff's claim under King

12   County Code 28.96.

13   **C.  Outrage Claim**

14   Defendant Olympic Security moves for summary judgment on Plaintiff's outrage claim

15   arguing no reasonable jury could find Defendant Olympic Security acted in a manner that was

16   extreme and outrageous when it responded to the assault by observing and reporting as was

17   required by its contract with Defendant King County.  (Dkt. No. 43 at 5–6.)  Plaintiff argues she

18   "has sufficient evidence to support the genuine issue of whether the conduct of [Defendant

19   Olympic Security's] employees in fact amounts to just that."  (Dkt. No. 52 at 20.)

20   Viewing the underlying facts in the light most favorable to Plaintiff, the Court finds a

21   reasonable jury could find Defendant Olympic Security acted in an extreme and outrageous

22   manner.  Plaintiff, a minor at the time of the assault, offers evidence that she was "physically

23   struck, kicked, knocked to the ground, and stomped on."  (Dkt. No. 53 at 4.)  A video recording

24   
ORDER ON PLAINTIFF'S MOTION FOR RELIEF
FROM EXPERT WITNESS DEADLINE,
DEFENDANT KING COUNTY'S MOTION FOR
SUMMARY JUDGMENT, AND DEFENDANT
OLYMPIC SECURITY'S MOTION FOR
SUMMARY JUDGMENT- 14

of the incident reveals adults failing to take any action and even walking away while a child is brutally beaten. (Dkt. No. 61.)   The Court finds the issue of whether Defendant Olympic Security's conduct was extreme and outrageous is a question of fact for the jury, and DENIES Defendant Olympic Security's Motion for Summary Judgment as to Plaintiff's outrage claim.

**D.  Section 1983 Claim**

In her response brief, Plaintiff refers to her Section 1983 claim against Defendant Olympic Security. (Dkt. No. 52 at 8.)  Defendant Olympic Security did not move for summary judgment on this claim. (Dkt. No. 43.)  In its reply brief, Defendant Olympic Security argues: (1) that Plaintiff has not plead a Section 1983 claim against Defendant Olympic Security; and (2) that even if such a claim is properly before the Court, it should be dismissed for various reasons. (Dkt. No. 63.)  It appears that Plaintiff has plead a Section 1983 claim against Defendant Olympic Security. (Dkt. No. 3 at 16–18.)  Because Defendant Olympic Security raised arguments regarding this claim for the first time in its reply brief, the Court will not consider these arguments and will not dismiss Plaintiff's claim at this time.

**<u>Conclusion</u>**

The Court DENIES Plaintiff's Motion for Relief from Expert Witness Deadline, (Dkt. No. 50), GRANTS in part and DENIES in part Defendant King County's Motion for Summary Judgment, (Dkt. No. 39), and GRANTS in part and DENIES in part Defendant Olympic Security's Motion for Summary Judgment, (Dkt. No. 43).

//

//

//

//

ORDER ON PLAINTIFF'S MOTION FOR RELIEF FROM EXPERT WITNESS DEADLINE, DEFENDANT KING COUNTY'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT OLYMPIC SECURITY'S MOTION FOR SUMMARY JUDGMENT- 15

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated this 19th day of April, 2016.

3

4                                                    _____
                                                     Marsha J. Pechman
5                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   ORDER ON PLAINTIFF'S MOTION FOR RELIEF
     FROM EXPERT WITNESS DEADLINE,
     DEFENDANT KING COUNTY'S MOTION FOR
     SUMMARY JUDGMENT, AND DEFENDANT
     OLYMPIC SECURITY'S MOTION FOR
     SUMMARY JUDGMENT- 16